**Opinion issued November 1, 2012**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-10-01090-CR

## NO. 01-10-01091-CR

————————————

**ALI YAZDCHI, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1161934 & 1161935**

---

## MEMORANDUM OPINION

Appellant, Ali Yazdchi, was charged by indictment with aggregate theft of over $20,000 and under $100,000[1] and with falsely holding himself out as a lawyer.[2] Appellant pleaded not guilty, and a jury found him guilty on both charges. The trial court assessed punishment at 10 years' confinement each, running concurrently. In three issues, appellant argues the trial court erred by (1) allowing the State to impeach appellant on a previous conviction that had been set aside; (2) allowing the State to introduce evidence of an agreed final civil judgment; and (3) not allowing appellant to seek community supervision.

We affirm in each cause.

## Background

Jessica Debellefeuille worked at the Penthouse strip club in 2006. Appellant frequently visited the club. He went by the name of Al Giovanni and would introduce himself as a lawyer to people he met there. In February of 2006, Jessica was involved in a serious car accident, requiring hospitalization and follow-up care. Following the accident, she approached appellant, asking him to help her with collecting the insurance from the accident. Appellant agreed.

---

[1] *See* TEX. PENAL CODE ANN. §§ 31.03(a). (e)(5), 31.09 (Vernon 2011).

[2] *See* TEX. PENAL CODE ANN. § 38.122(a) (Vernon 2011).

Debellefeuille signed some documents as a result of her agreement with appellant, though which documents she signed is a matter of dispute. Appellant subsequently sent letters of representation to Progressive County Mutual Insurance Company, Debellefeuille's automotive policy insurer, and Texas Farm Bureau Insurance, the automotive policy insurer for the other driver in the accident. Both letters contained letterhead indicating it was sent from "Giovanni and Associates." The letters instructed the insurance companies to direct all communications, payments of medical bills, and settlements through him. Enclosed with both letters was a power of attorney, purporting to have been signed by appellant and Debellefeuille.

Ultimately, both insurance companies settled the claims with appellant, issuing over $50,000 to him. Both companies sent appellant settlement and release forms to be signed by him and Debellefeuille. Both documents were returned with signatures for appellant and Debellefeuille. All of the money received from the insurance companies was deposited into one of appellant's personal bank accounts.

There is no indication that any of the money was dispersed to Debellefeuille, and she denies ever receiving any money. Instead, Debellefeuille testified at trial that appellant repeatedly told her he was not able to collect any money and that she did not learn about any money being collected until she was contacted by the district attorney's office two years later.

3

Appellant was charged by indictment with aggregate theft of over $20,000 and under $100,000 and with falsely holding himself out as a lawyer. Before trial, appellant filed a motion for community supervision. In the motion, appellant acknowledged that he had a previous conviction but also represented that it had been set aside. Prior to trial, the parties discussed the motion with the trial court. Appellant argued that, because the conviction had been set aside pursuant to section 20 of article 42.12 of the Texas Code of Criminal Procedure, he should be allowed to seek community supervision before the jury during the punishment phase of the trial. The trial court disagreed and determined he was not eligible to go before the jury to ask for community supervision. The conviction itself, however, was not admitted in evidence and therefore was not considered by the jury.

During trial, the State sought to introduce evidence of an agreed final judgment and permanent injunction entered against appellant in a civil case in 2000. As a part of the agreed final judgment, appellant agreed, among other things, to not use any name other than Ali Yazdchi in any business transaction and to not represent, "expressly or by implication, that [appellant] is an attorney." The trial court overruled appellant's objections and admitted the judgment into evidence.

4

## Prior Conviction for Impeachment

In his first issue, appellant argues that the trial court erred by allowing the State to impeach him on a previous conviction that had been set aside. The State argues that appellant has not preserved this argument for appeal. We agree.

The State filed a notice of intent to use evidence of a prior conviction rendered against appellant on November 17, 2000. Appellant argues that trial court should not have allowed the State to use this prior conviction to impeach him and that its decision effectively forced appellant not to testify, lest he be impeached with the conviction. As the State points out, however, there is no evidence that the trial court ruled on the admissibility of the conviction or that the State ever attempted to introduce evidence of this prior conviction for any purpose during any part of the trial.

In order to establish that appellant objected and that the trial court ruled on the objection, appellant points to the portion of the record where he sought to have the option of community supervision submitted to the jury during the punishment hearing. Trial court determined he was not eligible to go before the jury to ask for community supervision due to that prior conviction. However, the trial court did not rule on whether the State would be permitted to use this prior conviction for impeachment purposes.

In order to preserve a complaint for review on appeal, a party must make a timely, specific objection or motion to the trial court that states the grounds for the ruling sought, and the trial court must rule on the request or objection. TEX. R. APP. P. 33.1(a); *Gutierrez v. State*, 36 S.W.3d 509, 511 (Tex. Crim. App. 2001). Additionally, the objection at trial must comport with the complaint raised on appeal. *See Swain v. State*, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005).

Appellant's only objection about his prior set-aside conviction concerned whether it prevented him from seeking community supervision. This objection did not preserve any complaint about whether he could be impeached with the prior conviction. *See id.* There was no other objection, ruling, or testimony on this prior conviction anywhere in the record.[3] Accordingly, this complaint has not been preserved for appeal. *See* TEX. R. APP. P. 33.1(a).

We overrule appellant's first issue.

## Admissibility of Agreed Judgment

In his second issue, appellant argues the trial court erred by allowing the State to introduce evidence of an agreed final civil judgment.

---

[3] In his brief on appeal, appellant argues he was not required to testify in order to preserve this issue for appeal, distinguishing *Luce v. U.S.*, 469 U.S. 38, 42, 105 S. Ct. 460, 463 (1984). Regardless of the merits of this argument, he was required to object and to obtain a ruling. *See* TEX. R. APP. P. 33.1(a).

## A. Standard of Review

When reviewing a trial court's decision to admit extraneous-offense evidence under rule 404(b), or over a Rule 403 objection, an appellate court applies an abuse-of-discretion standard. *See De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *Williamson v. State*, 356 S.W.3d 1, 22 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). A trial court abuses its discretion only when its decision lies outside "the zone of reasonable disagreement." *De La Paz*, 279 S.W.3d at 343–44.

## B. Analysis

Pursuant to Rule of Evidence 404(b), "[e]vidence of other crimes, wrongs or acts" may not be admitted during the guilt-innocence phase of trial "to prove the character of a person in order to show action in conformity therewith." Tex. R. Evid. 404(b). It may be admitted, however, "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* Nonetheless, otherwise admissible evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Tex. R. Evid. 403.

The State's charge alleged, in pertinent part, that appellant also went by the name of Al Giovanni and that he had falsely held himself out as a lawyer to Debellefeuille. During trial, the State sought to introduce evidence of an agreed

final judgment and permanent injunction entered against appellant in a civil case in 2000. The lawsuit identified appellant as "Ali Yazdchi, also known as Al Giovanni." As a part of the agreed final judgment, appellant agreed, among other things, to not use any name other than Ali Yazdchi in any business transaction and to not represent, "expressly or by implication, that [appellant] is an attorney."

Appellant argued that the agreed civil judgment served no purpose other than to show character conformity and that any probative value of the judgment was outweighed by its prejudicial effect. *See* TEX. R. EVID. 403, 404(b). The State argued that the evidence was relevant to show absence of mistake or accident and that the probative value outweighed any prejudicial effect. *See* TEX. R. EVID. 403, 404(b).

The trial court overruled appellant's objections and admitted a redacted version of the agreed final judgment. On appeal, appellant argues the trial court abused its discretion by overruling his objections. We do not need to determine whether the trial court erred in admitting the evidence because we hold that any error was harmless.

We disregard error in the admission of evidence unless it affects the defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim.

8

App. 1997); *Oprean v. State*, 238 S.W.3d 412, 415 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). "A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In performing a harm analysis, we examine the entire record, including all evidence and testimony as well as all parts of the trial, such as closing statements and voir dire, when necessary. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We also consider the jury instructions, the State's theory, any defensive theories, and whether the State emphasized the alleged error. *Id.* at 355–56.

We begin by observing that the unredacted portions of the agreed civil judgment were read once into the record. The judgment was never mentioned again in testimony or in closing arguments. Additionally, the jury charge instructed the jury that they could consider any other alleged offense only for the purpose of "determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the defendant, if any, in connection with the offense if any, alleged against him in the indictment and for no other purpose."

Furthermore, there was enough evidence in the record to support the jury's finding of guilt on both charges to give this Court fair assurance that the error did not influence the jury, or had but a slight effect. *See Johnson*, 967 S.W.2d at 417. Whether appellant had agreed not to go by another name or to hold himself out as a lawyer had no bearing on whether he committed theft. Accordingly, any error in admission of the evidence could not have had more than a slight effect on this charge.

For the charge of falsely holding himself out as a lawyer, the relevant statute provides,

> A person commits an offense if, with intent to obtain an economic benefit for himself or herself, the person holds himself or herself out as a lawyer, unless he or she is currently licensed to practice law in this state, another state, or a foreign country and is in good standing with the State Bar of Texas and the state bar or licensing authority of any and all other states and foreign countries where licensed.

TEX. PENAL CODE ANN. § 38.122(a) (Vernon 2011). The State charged appellant with falsely holding himself out as an attorney to Debellefeuille with the intent to obtain an economic benefit for himself.

Debellefeuille testified repeatedly that appellant identified himself to her and to anyone he met at the club as a lawyer. His business cards identified himself as an attorney at law. When Debellefeuille told him about her accident, he told her that he would "handle the case."

10

Appellant presented evidence that, after he agreed to help her handle the case, Debellefeuille had signed a document making appellant her attorney in fact and acknowledging that appellant was not a licensed attorney. Debellefeuille denied signing the document, and appellant presented the evidence of a handwriting expert that identified the signature as authentic.

Even assuming Debellefeuille did sign this document, the undisputed evidence shows that appellant had previously identified himself to her as a lawyer, including identifying himself as one on business cards, and said he would handle the case when she talked to him about the accident.

There was also evidence that appellant advertised in local magazines written in Persian. The State presented evidence that appellant identified himself as an "experienced attorney with record of work in all courts." The advertisement also said "state and federal court (criminal & civil)" and had bullet points for auto accidents, personal injury, slip and fall, family law, work-related injuries, medical malpractice, criminal law cases, bankruptcy, and elimination of credit problems.

Appellant presented testimony of his own translator that denied the advertisement identified appellant as an attorney. Even without this specific identification, however, the advertisement strongly suggests, as a whole, that appellant was identifying himself as a lawyer and soliciting work as a lawyer.

11

The State presented evidence that appellant was not licensed in the State of Texas and was not in good standing with the State Bar of Texas. Appellant acknowledged that he was not licensed in Texas. While there was some evidence suggesting that appellant was licensed in Iran, there is no evidence that he was ever in good standing with the State Bar of Texas, a critical requirement in order to prevent the identification of himself as a lawyer from being false. *See* TEX. PENAL CODE ANN. § 38.122(a).

We hold that, viewing the record as a whole, any error from the admission of the agreed civil judgment did not influence the jury, or had but a slight effect. We overrule appellant's second issue.

## Community Supervision

In his third issue, appellant argues the trial court erred by not allowing him to seek community supervision.

### A. Standard of Review

This issue requires statutory interpretation. Statutory interpretation is a question of law, which we review de novo. *Brooks v. State*, 226 S.W.3d 607, 610 (Tex. App.—Houston [1st Dist.] 2007, no pet.). It also requires application of the law to facts that do not depend on evaluations of credibility or demeanor. We also apply a de novo review to such matters. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

**B. Analysis**

On November 17, 2000, appellant was convicted of aggregate theft in another case. Punishment was assessed at 10 years' confinement. The sentence was suspended, however, and appellant was placed on community supervision for 10 years.

On February 7, 2003, following a motion filed by appellant, the trial court for that case discharged appellant from community supervision, allowed appellant to withdraw his plea in the case, dismissed the indictment against appellant, and set aside the judgment of conviction. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 20(a) (Vernon Supp. 2011).

Before trial, appellant filed a motion for community supervision. In the motion, appellant acknowledged that he had a previous conviction but also represented that it had been set aside. Prior to trial, the parties discussed the motion with the trial court. Appellant argued that, because the conviction had been set aside pursuant to section 20 of article 42.12 of the Texas Code of Criminal Procedure, he should be allowed to seek community supervision before the jury during the punishment phase of the trial. The trial court disagreed and determined he was not eligible to go before the jury to ask for community supervision.

On appeal, appellant argues that he should have been allowed to have the issue of community supervision submitted to the jury. Appellant acknowledges

13

that our previous holding in *Smiley v. State*, 129 S.W.3d 690 (Tex. App.—Houston [1st Dist.] 2004, no pet.) conflicts with his argument. Accordingly, appellant also asks us to overrule *Smiley*.

A defendant is eligible to seek community supervision before a jury "only if before the trial begins the defendant files a written sworn motion with the judge that the defendant has not previously been convicted of a felony in this or any other state, and the jury enters in the verdict a finding that the information in the defendant's motion is true." TEX. CODE CRIM. PROC. ANN. art. 42.12, § 4(e). Appellant, like the defendant in *Smiley*, argues that he should have been able to seek community supervision because his previous conviction had been set aside. *See Smiley*, 129 S.W.3d at 693–94.

Pursuant to section 20 of article 42.12 of the Texas Code of Criminal Procedure, the trial court is required to amend or modify the imposition of community supervision, including discharge of the community supervision, upon satisfactory fulfillment of the conditions of community supervision for a certain period of time. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 20(a). If it does discharge the defendant from community supervision, the trial court has the discretion to set aside the verdict and allow the defendant to withdraw his plea. *Id.* In that case, the trial court must dismiss the indictment against the defendant, "who shall thereafter be released from all penalties and disabilities resulting from the

offense or crime of which the defendant has been convicted or to which the defendant has pleaded guilty." *Id.* The Court of Criminal Appeals has held that the words of the statute "are crystal clear." *Cuellar v. State*, 70 S.W.3d 815, 819 (Tex. Crim. App. 2002). "If a judge chooses to exercise this judicial clemency provision, the conviction is wiped away, the indictment dismissed, and the person is free to walk away from the courtroom 'released from all penalties and disabilities' resulting from the conviction." *Id.*

This "judicial clemency" is not absolute, however. Section 20 of article 42.12 also provides that "proof of the conviction or plea of guilty shall be made known to the judge should the defendant again be convicted of any criminal offense." TEX. CODE CRIM. PROC. ANN. art. 42.12, § 20(a)(1). The Court of Criminal Appeals has held that when this subsection applies, the "previously dismissed 'former' felony conviction will resurrect itself and be made known to the trial judge." *Cuellar*, 70 S.W.3d at 820.

Relying on this language from *Cuellar*, this Court in *Smiley* held that a defendant whose previous conviction has been set aside under section 20 of article 42.12 cannot seek community supervision in the punishment phase of his trial for any criminal offense. 129 S.W.3d at 695. We reasoned that, because the set-aside conviction had been "resurrected" at the time of punishment, the defendant could not argue that he had not been previously convicted of a felony. *Id.*; *see also* TEX.

15

CODE CRIM. PROC. ANN. art. 42.12, § 4(e). We concluded by holding that, absent evidence that he has been exonerated of the prior offense, the defendant is not eligible to seek community supervision. *Smiley*, 129 S.W.3d at 695.

Generally, we adhere to our precedents pursuant to the doctrine of *stare decisis*, "because it promotes judicial efficiency and consistency, it fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Riney v. State*, 28 S.W.3d 561, 565 (Tex. Crim. App. 2000). "The interests underlying the doctrine of *stare decisis* are at their height for judicial interpretations of legislative enactments upon which parties rely for guidance in attempting to conform to those legislative enactments." *Busby v. State*, 990 S.W.2d 263, 267 (Tex. Crim. App. 1999). "Certainly when a legislature reenacts a law using the same terms that have been judicially construed in a particular manner, one may reasonably infer that the legislature approved of the judicial interpretation." *State v. Medrano*, 67 S.W.3d 892, 902 (Tex. Crim. App. 2002).

We issued *Smiley* in 2004. Since that time, the Texas Legislature has amended subsection 20(a) to article 42.12 twice. Act of May 25, 2011, 82d Leg., R.S. ch. 961, § 2, 2011 Tex. Gen. Laws 2414, 2415 (West); Act of May 21, 2007, 80th Leg., R.S., ch. 1205, § 6.20, 2007 Tex. Gen. Laws 4078, 4080 (West). None of those changes addressed the portion of the statute that *Smiley* interpreted. *Id.*

16

Accordingly, under the principle of *stare decisis*, we may reasonably infer that the legislature has approved of our interpretation. *See Medrano*, 67 S.W.3d at 902.

Similarly, in *Samaniego*, the trial court refused to instruct the jury on the issue of community supervision after evidence had been introduced that his previous conviction had been set aside pursuant to the predecessor to section 20 of article 42.12. *Samaniego v. State*, 647 S.W.2d 762, 763 (Tex. App.—Austin 1983, no writ). The Austin Court of Appeals held that the trial court did not err in refusing to instruct the jury on community supervision. *Id.* at 764. The pertinent language in the predecessor to section 20 of article 42.12 is substantially similar to the current provision. *See id.* Accordingly, it can be reasonably inferred that the Texas Legislature has been aware of how section 20 has been interpreted since at least 1983 and has approved of this interpretation. *See Medrano*, 67 S.W.3d at 902.

We further note that *Samaniego* relied, in part, on *Taylor*, an earlier Court of Criminal Appeals case. *Samaniego*, 647 S.W.2d at 764 (citing *Taylor v. State*, 612 S.W.2d 566 (Tex. Crim. App. 1981)). In *Taylor*, the defendant had been previously convicted in Minnesota. 612 S.W.2d at 570. That conviction was subsequently set aside in an "Order of Discharge and Restoration of Civil Rights." *Id.* The defendant argued that "the order, discharging him from penal control, restoring all of his civil rights, and setting aside and nullifying his conviction [was]

the equivalent of a full pardon." *Id.* at 570–71. The Court of Criminal Appeals disagreed, holding that even if the order was "a full pardon, [the defendant's] contention still would be without merit." *Id.* at 571. Instead, a pardon would allow him to seek community supervision only if there was an express finding of actual innocence. *Id.* (citing *Watkins v. State*, 572 S.W.2d 339 (Tex. Crim. App. 1978)); *see also Smiley*, 129 S.W.3d at 695 (citing *Watkins* for same holding).

Under the principle of *stare decisis*, we decline appellant's request to overrule *Smiley*. Based on *Smiley*, we hold that the trial court did not err by refusing to allow the issue of community supervision to be considered by the jury. 129 S.W.3d at 693–96.

We overrule appellant's third issue.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Higley, Sharp, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

18